United States District Court
Southern District of Texas
**ENTERED**
March 29, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVEY ENRIQUEZ, #01483328, | § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-15-3072 |
| TDCJ, *et al.*, | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se*, filed this section 1983 lawsuit alleging violations of his constitutional and federal statutory rights by prison correctional employees John W. Jackson, Billy A. McCreary, Robert Fannin, Christopher Lacox, Eric Oakes, Tresea Jefferson, Darryl Sanders, Darrell Sutton, Neal Hinson, Michael Lewis, and Michael Kirk. Plaintiff also names as a defendant the Texas Department of Criminal Justice ("TDCJ").

Defendants filed a motion for summary judgment (Docket Entry No. 34). Plaintiff filed a response, but failed to serve defendants a copy. (Docket Entry No. 39.) The response is not properly before the Court and will not be considered.[1]

---

[1] The Court has reviewed plaintiff's response in the interest of justice. The response was not filed under penalty of perjury and presents no probative summary judgment evidence. Even assuming the response were properly filed, it would not prevent the granting of defendants' motion for summary judgment.

Based on careful consideration of the motion, the summary judgment evidence, the record, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

## I. BACKGROUND AND CLAIMS

Plaintiff claims in his original complaint that he did not receive all items of his personal property following his September 2013 transfer from the Telford Unit to the Estelle High Security Unit. He argues that defendant Eric Oakes is liable for the property loss because Oakes signed plaintiff's property inventory form.

Plaintiff further claims that on February 20, 2014, he complained to Estelle Unit correctional employees Tresea Jefferson and Darryl Sanders that he had not been issued a mattress; he states that he was told no mattresses were available at that time. He complained in a subsequent grievance that, as of February 22, 2014, he still had not been issued a mattress, and that he had only a blanket and a sheet to sleep on for four days. (Docket Entry No. 34-1, p. 3.)

Plaintiff states that on February 22, 2014, he was restrained with handcuffs and removed from his cell for a routine cell search. Upon being returned to his cell, he was ordered several times to relinquish the restraints and submit to a strip search. Plaintiff states that he refused to obey the orders because he still had not been given a mattress. Ultimately, a use of force team was called and a chemical aerosol was used to subdue plaintiff and regain control of the handcuffs. Plaintiff claims that he was "gassed" solely as harassment and in

2

retaliation for his complaints regarding the mattress. He received a disciplinary conviction for the incident, which reduced his line class status and required his re-assignment to less-desirable housing; plaintiff claims that this, too, was solely for harassment and retaliatory purposes.

Shortly after the use of force incident, plaintiff told prison officials he was feeling suicidal, and was told by a corrections officer that help would be requested. A few hours later, plaintiff was removed from his cell for transport to the Estelle Unit Regional Medical Facility ("RMF"), which was located across the street. As the officers prepared the transport, plaintiff claims that he was threatened by defendant Sanders; however defendant corrections officer John W. Jackson intervened and took Sanders's place in the transfer vehicle. Defendant Jackson and two other correctional officers drove plaintiff across the street to the RMF.

Plaintiff alleges that, upon their arrival at the RMF, he was escorted to the medical department where he was met by defendant Billy A. McCreary. Plaintiff claims McCreary struck him in the face then pulled out his penis and placed it in plaintiff's hand.[2] Defendant Jackson struck plaintiff on the head with a metal bar, causing him to pass out. When he came to, the other officers allegedly continued beating him until defendant McCreary told them to stop. Plaintiff was taken to the infirmary, where he was examined and received five stitches

---

[2]Plaintiff contends that defendants concede in their motion that these events occurred. Plaintiff misunderstands. Defendants were restating *plaintiff's* allegations, and were not agreeing that his allegations were factually correct.

3

for a scalp laceration. Plaintiff subsequently received a disciplinary conviction for "head-butting" McCreary during the incident. Defendants state that the head-butting had required the second use of force to bring plaintiff under control, which resulted in his scalp laceration.

Plaintiff remained at the RMF until he was transferred to the Skyview Unit (a psychiatric unit) on February 27, 2014. He was discharged from Skyview a few days later and returned to the Estelle Unit. He remained under mental health care at the Estelle Unit until August 13, 2014.

Plaintiff argues that the defendants' actions violated his Eighth Amendment rights as well as his rights under the Americans with Disabilities Act ("ADA"). He sues the defendants in their individual capacities, and the TDCJ, for compensatory and punitive damages.

Defendants argue that plaintiff's Eighth Amendment claims have no merit, and that the individual defendants are entitled to qualified immunity. Defendants further argue that plaintiff did not administratively exhaust some of his claims, and that they are barred by 42 U.S.C. § 1997(e)(a).

## II. PROCEDURAL BACKGROUND

In the course of prosecuting this lawsuit, plaintiff filed two motions for leave to amend his complaint. (Docket Entries No. 23, 27.) In the motions, plaintiff informed the Court that he wanted to (1) withdraw his property and medical claims and pursue only his excessive force claim; (2) remove Oakes as a defendant; (3) remove all named defendants

4

except defendants McCreary and Jackson; and (4) withdraw all claims as to sexual misconduct. The Court denied plaintiff's first motion without prejudice for his failure to serve defendants a copy of the motion, and denied the second motion for his failure to sign his pleading. Plaintiff did not pursue a third motion for leave to amend.

Because plaintiff twice clearly evinced an intent to withdraw the listed claims and to dismiss his claims against all named defendants except McCreary and Jackson, a persuasive argument could be made that plaintiff's motions to amend constituted voluntarily dismissals of those claims and defendants. However, given that defendants have addressed in this summary judgment proceeding all of plaintiff's claims as to all of the named defendants, the Court will do likewise.

### III. SUMMARY JUDGMENT STANDARDS

Defendants set forth the proper standards for the district court's review of summary judgment proceedings (Docket Entry No. 34, pp. 7–8). Summary judgment should be granted when the moving party conclusively establishes that there is no genuine issue of material fact. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). There is no issue for resolution at trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party may satisfy its burden by negating the existence of an essential element of the nonmoving party's case. *Celotex Corp.*, 477 U.S. at

325. Alternatively, if the moving party will not bear the burden of proof at trial on a particular issue, it may meet its initial burden by pointing out the absence of evidence supporting that element of the nonmoving party's case. *Id.*; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996); *Transamerica Ins. Co. v. Avenall*, 66 F.3d 715, 718–719 (5th Cir. 1995).

Once the moving party has carried its burden, the burden shifts to the nonmoving party to show that summary judgment is not appropriate. *Exxon Corp. v. Baton Rouge Oil*, 77 F.3d 850, 853 (5th Cir. 1996). The nonmoving party cannot discharge its burden by alleging legal conclusions or unsubstantiated assertions, nor can it rest on the allegations of the pleadings; instead, it must present affirmative evidence in order to demonstrate the existence of a genuine issue of material fact and defeat a motion for summary judgment supported by competent evidence. *Anderson*, 477 U.S. at 248–250; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). When the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Id.* However, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt the version of the facts for purposes of ruling on a motion for summary judgment. *Id.*

## IV. EXHAUSTION STANDARDS

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Fifth Circuit Court of Appeals recognizes this exhaustion requirement as "mandatory and nondiscretionary," *Moussazadeh v. Texas Dep't of Criminal Justice*, 703 F.3d 781, 788 (5th Cir. 2012), and has held that "district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion under the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). To properly exhaust administrative remedies, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules." *Id*. Although the PLRA itself does not specify what constitutes proper exhaustion, the United States Supreme Court has held that this involves asking whether the prisoner complied with the prison grievance process of his unit of confinement. *Jones v. Bock*, 549 U.S. 199, 218–19 (2007).

The TDCJ use a well-established two-step formal grievance process. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). A TDCJ prisoner must file a step 1 grievance within fifteen days of the incident being grieved. *Id.* Upon receiving an adverse step 1 grievance response, a prisoner must then appeal by filing a step 2 grievance within fifteen days. *Id.* The Fifth Circuit requires a prisoner to strictly adhere to this prison grievance procedure to exhaust a claim. "[A] prisoner must pursue a grievance through both steps for it to be considered exhausted." *Id.*; *see also Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion."). A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Woodford*, 548 U.S. at 83–84.

Though inmates are not required to specify specific legal theories in their grievances to properly exhaust, they must meet a threshold of specificity in order to do so. *Johnson*, 385 F.3d at 518. "In deciding how much detail is required in a given case, we believe that a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally.'" *Id.* at 516. Thus, a grievance should be considered sufficient to the extent it provides prison officials a fair opportunity to address the problem that will later form the basis of the lawsuit. *Id.* at 517. In addition, the level of specificity required should be interpreted in light of the grievance rules of the TDCJ, and the amount of information necessary will likely depend to some

8

degree on the type of problem about which the inmate is complaining. *Id.* at 516. The Fifth Circuit observed in *Johnson* that if

> an inmate claims that a guard acted improperly, we can assume that administrators . . . would want to know – and a prisoner could ordinarily be expected to provide – details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter.

*Id.* at 517.

Failure to exhaust is an affirmative defense on which the defendant bears the burden of proof. *See Abbott v. Babin*, 587 F. App'x 116, 118 (5th Cir. Sept. 29, 2014) ("When defendants seek to avail themselves of the affirmative defense of failure to exhaust, they bear the burden of showing that administrative remedies were not exhausted."); *Morgan v. Texas Department of Criminal Justice McConnell Unit*, 537 F. App'x 502, 508 (5th Cir. Jul. 31, 2013). A claim must be dismissed if a defendant demonstrates that the prisoner failed to exhaust it through the available prison grievance system.

Plaintiff acknowledges that not all of his claims were exhausted prior to the filing of this lawsuit, and posits at least three arguments for excusing his failure to exhaust. First, he claims that he "could not mentally ex[h]aust administrative remedies" following the events of February 22, 2014. (Docket Entry No. 39, p. 3.) This assertion was not made under penalty of perjury and does not constitute probative summary judgment evidence. Regardless, the record shows that plaintiff grieved the first use of force incident in a step 1 grievance timely filed on February 25, 2014, three days after the incident. (Docket Entry No.

34-1, pp. 3–4.) Plaintiff's assertion that he was mentally unable to pursue grievances is unsupported by probative summary judgment evidence and is rebutted by the record.

Plaintiff next argues that in *Bock*, the Supreme Court held that prisons cannot impose a time limit on when prisoners may file grievances alleging sexual abuse. (Docket Entry No. 39, p. 3.) Plaintiff is misinformed, as the Supreme Court made no such holding in *Bock*.

Plaintiff lastly contends that there was insufficient time to exhaust his grievances as to the events of February 22, 2014, because only one grievance could be filed every seven days. (Docket Entry No. 8.) His argument provides him no relief. Plaintiff acknowledges that, under prison grievance procedures, he had fifteen days to file step 1 grievances. Consequently, there was adequate time for plaintiff to file step 1 grievances as to both incidents, had he acted promptly.

## V. ANALYSIS OF CLAIMS

### A. Defendant Oakes/Property Claims

Plaintiff complains that he did not receive all of his property following his transfer to the Estelle Unit. He seeks to hold Oakes liable for the monetary loss because Oakes signed the property inventory form.

Plaintiff's allegations do not raise an issue of federal constitutional dimension. Unauthorized deprivation of property caused by state officials does not infringe constitutional due process rights of a prisoner provided that adequate state post-deprivation remedies exist. *Zinermon v. Burch*, 494 U.S. 113, 115 (1990). Post-deprivation remedies exist in Texas. *See*

*Murphy v. Collins*, 26 F.3d 541, 543–44 (5th Cir. 1994); TEX. GOV'T CODE § 501.007. Plaintiff does not meet his burden of showing that post-deprivation state remedies were inadequate in his case. *See Jones v. Cortez*, 632 F. App'x 221 (5th Cir. Jan. 28, 2016).

To the extent plaintiff asserts that a loss of his legal papers and related property denied him access to the courts, no viable First Amendment claim is presented as he shows no actual injury. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996).

Defendants are entitled to summary judgment dismissal of these claims.

B.   <u>Defendants Jefferson and Sanders/ Mattress Claims</u>

To the extent plaintiff claims that the temporary denial of a mattress violated his Eighth Amendment protections against cruel and unusual punishment, he fails to demonstrate a constitutional issue. Prison conditions violate the Constitution only where they "deprive inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Sleeping without a mattress for a few days' time does not state a constitutional deprivation that may be redressed through a section 1983 action. *See, e.g., Phillips v. East*, 81 F. App'x 483, 485 (5th Cir. Nov. 24, 2003) (holding that denying prisoner a mattress, blanket, and toilet paper for three days, standing alone, was not a constitutional deprivation). Moreover, plaintiff fails to demonstrate that lack of a mattress caused him serious physical injury.

Plaintiff does not establish a constitutional violation as to his temporary lack of a mattress, and defendants are entitled to summary dismissal of the claim.

### C. First Use of Force Incident (#MA-01006-02-14)

On February 22, 2014, plaintiff was handcuffed and removed from his cell during a routine cell search. Following the search, he was returned to his cell and ordered to comply with removal of the handcuffs. Plaintiff admits that he refused to comply with the order, but argues it was because he still had not been issued a mattress. The prison incident reports indicate, and plaintiff does not dispute, that he managed to remove one hand from the cuffs, allowing the other handcuff to be used as a weapon. Plaintiff continued to refuse orders to allow prison officials to remove the handcuffs.

A five man team was assembled for use of force to gain compliance. Chemical agents were approved and were sprayed through the cell's tray slot. Plaintiff reached through the slot in an unsuccessful attempt to grab the spray can from the officers, resulting in a small abrasion on his thumb. He acquiesced to removal of the restraints and was escorted to the prison infirmary for a use of force physical examination. The abrasion on plaintiff's thumb was noted and treated with a band-aid, and plaintiff was taken to an administrative segregation holding cell. The records show that on March 5, 2014, plaintiff received a disciplinary conviction (#20140176449) for his actions in the incident.

In his step 1 grievance #2014102096 regarding the incident, petitioner complained that the "gassing" was retaliation and harassment. He also complained he was denied mental health care after the incident because it took "3, 4 hours before anything was done." No mention was made of any incidents that occurred thereafter. (Docket Entry No. 34-1, pp.

3–4.) Defendants state that plaintiff subsequently filed a step 2 grievance, but that it grieved other issues and was denied. (Docket Entry No. 34, p. 7, Statement S.)

Even assuming proper exhaustion, plaintiff fails to establish that defendants violated his constitutional rights as to the first use of force incident. Plaintiff claims that the use of force was unnecessary, and that its sole purpose was for harassment and retaliation. He argues that he kept the handcuffs as leverage for obtaining a mattress. To prevail on a claim of retaliation, an inmate must allege and prove the violation of a specific constitutional right and establish that, but for a retaliatory motive, the complained-of incident would not have occurred. *Woods v. Smith*, 60 F.3d 1161 (5th Cir. 1995); *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Plaintiff falls well short of this burden of proof. The probative summary judgment evidence clearly shows that plaintiff deliberately held on to the handcuffs and ignored repeated orders to relinquish them to the officers. Plaintiff enjoyed no constitutional right to maintain control over the handcuffs. The use of force was the result of plaintiff's deliberate refusals to return a potential weapon to the officers and to obey direct orders. No retaliatory motive is shown. For the same reasons, plaintiff fails to demonstrate a use of excessive force in violation of the Eighth Amendment.

Plaintiff's conclusory allegations that the use of force was retaliatory and unnecessary are not supported by probative evidence, and defendants are entitled to summary judgment dismissal of this claim.

13

D. <u>Claims for Sexual Misconduct</u>

In his complaint, plaintiff alleges that defendants McCreary, Jackson, Lewis, and Kirk committed homosexual acts against him or forced him to submit to homosexual acts during the second use of force on February 22, 2014. In support, plaintiff asserts that McCreary "pulled out his penis and put it all over my hand," and that Jackson told him to "jack that dick." (Docket Entry No. 1, p. 9.) However, according to plaintiff, Jackson then struck plaintiff in the head and he passed out. *Id.*

Defendants contend that, even assuming plaintiff's allegations were supported in the record, his claims were not exhausted. After carefully reviewing the grievance exhibits submitted by plaintiff and defendants, the Court must agree. In none of the grievances does plaintiff complain of this alleged sexual misconduct by McCreary and Jackson. Although plaintiff complained in his step 1 grievance #2014126518, signed March 12, 2014, that "these officer homosexual acts" violated rules and policies, no date, location, specific acts, or identities of any officers were disclosed, and no required specificity was provided to prison officials. Plaintiff further stated in the grievance that he was "gassed in retaliation for filing grievances on the officers homosexual acts." Because the "gassing" occurred during the first use of force incident, the non-specific homosexual acts referenced in the grievance would have necessarily occurred *prior* to that incident. Consequently, plaintiff's generic

allegations of "officers homosexual acts" did not grieve the alleged sexual misconduct of McCreary and Jackson in the second use of force incident, and the claim is unexhausted.[3]

Defendants are entitled to summary judgment dismissal of these claims.

### E.   Second Use of Force Incident (#MA-01018-02-14)

Plaintiff alleges that, shortly after the first use of force the morning of February 22, 2014, he complained to prison officials that he was feeling suicidal, and requested mental

---

[3]The Court notes that plaintiff was under psychiatric and mental health care at the Skyview Psychiatric Unit and the Estelle Unit from February 22, 2014, to August 13, 2014. These medical records were submitted under seal for the Court's review (Docket Entry No. 36), and show that plaintiff arrived at the Skyview Unit on February 27, 2014. The reasons for his admission were reported as "suicide attempt/self injury" and "assaulted an officer; MUOF; fell cut his head /to FW to get sutures and now suicidal and reporting voices." *Id.*, p. 20. He was noted as having a "Laceration Unspecified First Observed 2/24/2014 12:44 PM." *Id.*, p. 13. His current complaints were reported as, "I'm hearing voices and seeing things. I used to be on psych meds and they took me off of it in 2012. I don't know what I took. The voices are telling me to kill myself and hurt people. I've been hearing them for a long, long time. When I hear them, I get scared and can't control myself. No, I'm not gonna try and hurt myself anymore. I didn't hit an officer, I don't care what they say." *Id.*, p. 21. Although the medical records show that plaintiff denied hitting the officer, they also show that he never complained of any sexual misconduct.

On March 3, 2014, during plaintiff's assessment for discharge from Skyview, his providers reported that, "He was advised of [Crisis Management] discharge and pending return to [Estelle] and made no complaints. [He] reported that he was having problems with officers [at Estelle]. It appears that he was involved in a [major use of force] which resulted in him having a head wound. He received a case for destroying state property as well." *Id.*, p. 26. It was noted that he "dislikes or has problems at [Estelle]." *Id.*, p. 27. Again, plaintiff made no mention of any sexual misconduct.

The summary judgment evidence further shows that plaintiff did not file any reports or complaints of sexual misconduct through the Prison Rape Elimination Act ("PREA") Program. (Docket Entry No. 34-2, p. 2.) Plaintiff had ample opportunities and resources for reporting the alleged sexual misconduct incident to prison officials, to his mental health care providers, and to PREA Program investigators, but voiced no complaints of record.

health treatment. He states in his complaint that he was transported across the street to the Estelle Unit RMF, where Jackson struck him across the head, and three other officers beat him up. Plaintiff states that he suffered a scalp laceration that required five stitches or staples to close, and claims that this incident, too, was solely for purposes of retaliation and harassment.

Defendants, on the other hand, allege in their "Statement of Material Facts" that

> While transferring Plaintiff to the RMF, another use of force occurred between him and Correctional Officer Michael Lewis, Sargent John Jackson, Lt. Billy McCreary and Correctional Officer Michael Kirk. Plaintiff was placed on the floor. As a result of this use of force, Plaintiff received some injuries, including a laceration on his head that required 5 staples.

(Docket Entry No. 34, p. 6, Statement Q.) Defendants claim that this second use of force was undertaken when plaintiff "head-butted" McCreary and force had to be used to bring plaintiff under control.[4] (Docket Entry No. 34-1, pp. 17–19.) The record shows that plaintiff received a disciplinary conviction (#20140182346) on or about March 12, 2014, for head-butting defendant McCreary during the second use of force incident. *Id.*, p. 14.

Defendants contend that plaintiff failed to exhaust his administrative remedies as to this second use of force incident. They state that, on March 17, 2014, plaintiff filed step 1 grievance # 2014110980 alleging that he was denied due process for the disciplinary case he received as a result of the second use of force. (Docket Entry No. 34, p. 7, Statement T.)

---

[4] According to the written grievance investigation report submitted by defendants, the second use of force was videotaped. *Id.*, p. 18. Defendants did not submit as summary judgment evidence the second videotape or any use of force investigation documents regarding this second use of force.

16

Defendants assert that plaintiff did not pursue a step 2 grievance. *Id.*, Statement U. However, plaintiff's exhibits include a step 2 grievance originally numbered #2014110930, which was re-numbered as grievance #2014126518 (Docket Entry No. 1, p. 4). Plaintiff expressly stated in the grievance that he was not appealing the disciplinary case, but rather, was complaining that the incidents of February 22, 2014 ("gassing me and beat[ing] the hell out of me") were done in retaliation for his complaints against prison officials.

Nevertheless, the grievances themselves show that plaintiff did not timely or properly grieve the second incident of February 22, 2014. It is undisputed that prison grievance procedures require a step 1 grievance to be filed within fifteen days after the complained-of event. The fifteenth day after February 22, 2014, fell on Sunday, March 9, 2014. Plaintiff's step 1 grievance #2014126518, signed March 12, 2014, stated that he had been found guilty of a disciplinary conviction for "head-butting" the officers at the RMF on February 22, 2014. (Docket Entry No. 8-1, p. 1.) Plaintiff further stated in the grievance that he "was taken to a building" where McCreary, Jackson, three other officers "beat the hell out of me where I had to get 5 staples in my head at the Free World Hospital HMH. I was bruised from head to toe, Sgt. Jackson hit me in the head with a bean tool." Plaintiff stated that because he was shackled and restrained at the time, "there was no way in hell I could have head-butted this Lt." He argued that the disciplinary charge was harassment and in retaliation for his earlier complaints. The grievance was returned to plaintiff, marked "The issue presented is not grievable." (Docket Entry No. 34-1, pp. 14–15.) Plaintiff subsequently filed a step 2

17

grievance #2014126518, again complaining that being gassed and having "the hell" beat out of him were harassment and retaliation for his earlier complaints. (Docket Entry No. 1, p. 4.) These grievances were not timely filed pursuant to prison grievance procedures and did not act to exhaust plaintiff's administrative remedies.

Defendants are entitled to summary judgment dismissal of these claims. *See Woodford*, 548 U.S. at 83–84.

F. <u>Claims under the ADA</u>

Plaintiff claims that TDCJ violated the ADA by denying him mental health treatment. To state a claim under the ADA, a plaintiff must allege that (1) he is a qualified individual; (2) who was excluded from participation in or denied the benefits of services, programs, or activities of a public entity; and (3) that the exclusion, denial, or discrimination was because of his disability. *See Blanks v. Southwestern Bell Communications*, 310 F.3d 398, 400 (5th Cir. 2002). However, the ADA is not violated by "a prison's simply failing to attend to the medical needs of its disabled prisoners." *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. Dec. 4, 2012).

Defendants' probative summary judgment evidence establishes that plaintiff was provided mental health treatment at the Estelle Unit, as well as psychiatric treatment at the Skyview Unit following his suicide ideations. (Docket Entry No. 36, pp. 1–38). Plaintiff's claim that defendants denied him mental health treatment is refuted by the record. Plaintiff

fails to establish that TDCJ violated the ADA, and defendants are entitled to summary judgment dismissal of this claim.

## VI. CONCLUSION

Defendants' motion for summary judgment (Docket Entry No. 34) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE**. Any and all pending motions are **DENIED AS MOOT**.

Signed at Houston, Texas, on this the 29th day of March, 2017.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE